# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

___

**CHRISTOPHER S. STRECKENBACH,**
    **Plaintiff,**

v.                                                **Case No. 17-C-412**

**MICHAEL F. MEISNER, et al.,**
    **Defendants.**

___

## DECISION AND ORDER

Plaintiff Christopher S. Streckenbach, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. Plaintiff was allowed to proceed on a retaliation claim against Podoski, LaFontaine, Crump, Kosminskas, and Radtke and a failure to intervene claim against Werner, Keller, Grenier, Smith, Wesner, Tarr, Hautamaki, and Meisner. Plaintiff filed his own motion for summary judgment (without any supporting materials), and the defendants also filed for summary judgment, arguing that plaintiff did not exhaust administrative remedies against certain defendants and that his claims fail on the merits against the remaining defendants. I will deny plaintiff's motion for failure to comply with Civil L.R. 56 (E.D. Wis.) and grant defendants' motion.

## I. BACKGROUND[1]

*A. The Parties*

Plaintiff was previously an inmate at Redgranite Correctional Institution ("Redgranite") and is currently an inmate at the Oshkosh Correctional Institution

---

[1] The facts are taken from "Defendant's Proposed Findings of Fact" (Docket No. 36). Plaintiff did not respond to defendant's proposed findings of fact, so they are deemed undisputed for purposes of summary judgment. Civil L.R. 56(4) (E.D. Wis.). Only facts relevant to deciding this motion and supported by admissible evidence will be included.

("Oshkosh"), both medium security prisons. Docket No. 36 at ¶¶ 1-2. Each of the defendants were employed at Redgranite during the relevant time. Michael Meisner was the warden; Sandra Hautamaki was deputy warden; David Tarr was security director; Andrew Wesner was an administrative captain; Michelle Smith was an institution complaint examiner ("ICE"); Joli Grenier was a unit manager; Nikolaus Werner was a psychologist supervisor; Chad Keller was a captain; John LaFontaine was a sergeant; and Michael Crump, Scott Kosminskas, and Greg Radtke were correctional officers. *Id.* at ¶ 3.

   *B. VanDensen Lawsuit*

On April 16, 2015, plaintiff filed a lawsuit in this district (case number 15-C-451) alleging that former Redgranite employee Sergeant VanDensen violated his due process rights by destroying certain personal property. *Id.* at ¶ 4. None of the defendants in this lawsuit were defendants in 15-C-451 case, which was ultimately dismissed on summary judgment (and affirmed on appeal). *Id.* at ¶¶ 5-6.

According to plaintiff, he was called into the mailroom around the time he filed the VanDensen lawsuit. While VanDensen was not present, several other staff members were, including defendants CO Crump and CO Kosminskas. *Id.* at ¶ 7. Plaintiff claims that CO Kosminskas said, "I heard you're suing me, and I need to know if I need to hire a good attorney." *Id.* at ¶ 8. Plaintiff replied that he was not suing Kosminskas and that state attorneys represent prison officials in those lawsuits anyway. *Id.* at ¶ 9. According to plaintiff, Crump then said, "Maybe we can get this thing resolved," which plaintiff was not comfortable with because he believed the VanDensen lawsuit was already pending. *Id.* at ¶ 10. He recalls very specifically that this conversation took place at 8:50 a.m. on

February 23, 2015. *Id.* at ¶ 11. (The VanDensen lawsuit was filed April 16, 2015, so if plaintiff is right about when the mailroom conversation occurred, it was before the lawsuit was pending. *Id.* at ¶ 12.)

Plaintiff also claims that CO Crump made "derogatory" comments about the merits of the VanDensen lawsuit, which plaintiff was "very sensitive" to because his property had been destroyed, and he felt "belittled." He then asked and was allowed to leave. *Id.* at ¶ 13.

C. Alleged Retaliation by CO Radtke

Plaintiff alleges that defendant CO Radtke retaliated against him for filing the VanDensen lawsuit by conducting a cell search on June 18, 2015. *Id.* at ¶ 14. As of that date, plaintiff's complaint in the VanDensen lawsuit had not been screened. *Id.* at ¶ 15. While plaintiff admits that such cell searches are "standard operating procedure," he alleges that CO Radtke had a "very, very big smile on his face" after the search, which plaintiff did not understand until he returned to his cell to find his property turned "upside down." *Id.* at ¶ 16. He recalls being in a "state of shock" and quickly reporting the incident to a supervisor and complained directly to CO Radtke. He requested an inmate complaint form, which CO Radtke gave him. *Id.* at ¶ 17.

Plaintiff submitted an inmate complaint about the incident (RGCI-2015-12001), but Warden Meisner dismissed the complaint on Inmate Complaint Examiner Smith's recommendation after unit staff reported already having looked into plaintiff's concerns about the search. *Id.* at ¶ 18. There was no evidence that CO Radtke conducted himself improperly; in fact, the routine search revealed that plaintiff was improperly using certain plastic bags to store his legal materials. *Id.* at ¶ 19. Plaintiff did not receive a conduct

3

report for the improper use of the bags, but the bags were removed from his cell and the contents placed on his bunk. *Id.* at ¶ 20. Plaintiff does not allege that the legal materials were read or seized and this is the only incident plaintiff has identified involving CO Radtke. *Id.* at ¶ 21.

### D. Alleged Retaliation by Sergeant LaFontaine

Plaintiff alleges that defendant Sergeant LaFontaine retaliated against him for filing the VanDensen lawsuit in several ways: by making derogatory and joking comments about the amount of money plaintiff was seeking to recover in the VanDensen lawsuit; saying that it was a joke for plaintiff to think he may prevail in the lawsuit; threatening to have plaintiff placed in confinement for no reason (and despite not ever writing plaintiff a conduct report); summoning plaintiff for no reason by saying "Attorney Streckenbach to the sergeant desk" through a public loudspeaker; and, on one occasion, repeatedly stamping "LEGAL MAIL OPEN IN PRESENCE OF INMATE" on an envelope containing plaintiff's legal mail. *Id.* at ¶ 22.

At his deposition, plaintiff testified that he believed such acts were meant to intimidate him, but when asked how the stamping of the mail could intimidate him, he responded: "Knowing that he's doing this to my legal, my confidential legal mail being sent into the institution? That is just an act of intimidation and harassment[.]." *Id.* at ¶ 23. Plaintiff testified in his deposition that he believed the joking "Attorney Streckenbach" comments were "derogatory" only because they were false (in that plaintiff is not an attorney). *Id.* at ¶ 24. Plaintiff makes no allegation that his legal mail was improperly read or that the delivery of the mail was interfered with or delayed. *Id.* at ¶ 25.

4

### E. Alleged Retaliation by CO Podoski

Plaintiff alleges that CO Podoski harassed him because of the VanDensen lawsuit. *Id.* at ¶ 26. CO Podoski was not present for the February 23, 2015 mailroom conversation in which plaintiff claims he was mocked about the lawsuit by COs Crump and Kosminskas. *Id.* at ¶ 27. When asked by Captain Keller about plaintiff's claims of harassment, CO Podoski denied any knowledge of the VanDensen lawsuit. *Id.* at ¶ 28. When plaintiff was asked in his deposition why he believed CO Podoski would be motivated to retaliate against him for filing the VanDensen lawsuit, plaintiff responded that Redgranite "is a very small place and everybody is aware of everything." *Id.* at ¶ 29. Plaintiff claims that CO Podoski knew the sister of the victim in plaintiff's criminal case, in which plaintiff was convicted of sexual assault. *Id.* at ¶ 30.

Plaintiff alleges that CO Podoski harassed him in the following ways: by kicking plaintiff's cell door and then walking away; telling plaintiff he was going to be placed on cell confinement "because your last name is Streckenbach"; repeatedly calling plaintiff "Redgranite's biggest jailhouse snitch" in front of other inmates; and repeatedly calling plaintiff "Redgranite's favorite jailhouse lawyer." *Id.* at ¶ 31. Plaintiff says he took the snitch comments seriously, but also testified that they were made in a joking manner ("he would make reference referring to me as Redgranite's biggest jailhouse snitch ha, ha, laugh laugh . . . ."). *Id.* at ¶ 32. According to plaintiff, he did in fact cooperate with authorities by providing information in several criminal investigations, but he admitted knowing of no evidence that CO Podoski knew about such cooperation when he called plaintiff a "snitch." *Id.* at ¶ 33. And although plaintiff testified that other inmates repeated

5

the snitch name-calling after hearing CO Podoski say it, he makes no allegation that he was actually threatened by other inmates because of the "snitch" label. *Id.* at ¶ 34.

Plaintiff denies that CO Podoski ever wrote him a conduct report and testified that the comments "were just idle threats he kept making." *Id.* at ¶ 35. Plaintiff unequivocally denied that any of CO Podoski's actions (or any of the other defendants' actions) deterred him from exercising his constitutional rights in any way. *Id.* at ¶ 36. Plaintiff did note that he filed this lawsuit, submitted several inmate complaints, and even complained about the alleged harassment to the program review committee in asking them to transfer him to another prison. *Id.* at ¶ 37.

*F. Alleged Retaliation by CO Crump and CO Kosminskas*

Part of the alleged retaliation by COs Crump and Kosminskas arises out of the alleged mocking in the mailroom on February 23, 2015. *Id.* at ¶ 38. Plaintiff did not timely file a grievance about the incident. *Id.* at ¶ 39. Instead, he attempted to grieve the incident by submitting it as "additional supporting evidence" regarding an entirely unrelated inmate complaint that was pending in 2017 (RGCI-2017-2270). *Id.* at ¶ 40. In reviewing plaintiff's material and rendering a decision on the 2017 complaint, ICE Smith noted (correctly) that the February 23, 2015 issue was not relevant to the issue in the 2017 complaint and would not be considered because plaintiff did not file a timely complaint about the incident after it happened. *Id.* at ¶ 41. The complaint system requires that complaints be filed within 14 days of the occurrence giving rise to the complaint. *Id.* at ¶ 42.

Plaintiff's retaliation claim against COs Crump and Kosminskas also arises out of an incident on February 7, 2017 in which plaintiff alleged that the two officers told him

6

he would have to undergo a strip search because he had an offsite medical appointment. *Id.* at ¶¶ 43-44. While plaintiff does not challenge the strip search requirement, he thought COs Crump and Kosminskas had a "conflict of interest" prohibiting them from being the ones to conduct the search. *Id.* at ¶ 44. Plaintiff believed they had a conflict of interest based solely on the fact that plaintiff's appeal of the decision in the VanDensen lawsuit was pending at the time. *Id.* A supervisor was called and neither CO Crump nor CO Kosminskas performed the search, and the supervisor advised plaintiff that he should request separation from COs Crump and Kosminskas if he believed there was a conflict of interest. *Id.* at ¶ 45.

Inmates may file separation requests (a.k.a. Special Placement Need requests or "SPN" requests) if they have ongoing issues with particular staff members, other inmates, or particular facilities. *Id.* at ¶ 47. Plaintiff filed two SPNs naming COs Crump and Kosminskas on March 1, 2017. *Id.* at ¶ 46. In addition to the SPNs, plaintiff also submitted an inmate complaint about the February 7, 2017 incident (RGCI-2017-5168). ICE Smith reviewed the complaint and contacted Security Director Tarr, who noted plaintiff had filed the separation requests and that an investigation of the requests had been initiated but not yet concluded. *Id.* at ¶ 49. Typically, if an inmate files an inmate complaint when a separation request is pending, the ICE will dismiss the complaint on the ground that the SPN investigation is pending. If the SPN request is later denied, the inmate may file an inmate complaint on the issue. *Id.* at ¶ 50. Because the SPN requests were pending, ICE Smith recommended dismissing plaintiff's complaint, which Warden Meisner did on March 13, 2017. *Id.* at ¶ 51.

Plaintiff neither appealed Warden Meisner's dismissal of that inmate complaint (as allowed under Wis. Admin. Code § DOC 310.13) nor waited for Security Director Tarr's decision on the pending separation requests before filing this lawsuit on March 21, 2017. *Id.* at ¶ 52. Security Director Tarr ultimately denied the SPN requests on March 28, 2017 based on his investigations findings, which did not meet the criteria for separation under applicable DOC policy. *Id.* at ¶ 54.

Plaintiff also makes arguments about CO Crump based on an incident report written on May 24, 2017, which is over two months after this lawsuit was filed. *Id.* at ¶ 56.

*G. Involvement of the Failure to Intervene Defendants*

Plaintiff sent correspondence to Captain Keller in November of 2016 complaining about the actions of CO Podoski and Sergeant LaFontaine. *Id.* at ¶ 57. When Captain Keller talked to plaintiff about his concerns, plaintiff admitted that he, CO Podoski, and Sergeant LaFontained had messed around with each other in a joking way. But plaintiff indicated he felt it was going too far, citing as evidence various acts, including Sergeant LaFontaine stamping plaintiff's legal mail multiple times and belittling him about the disposal of his property; and CO Podoski kicking his cell door and telling him he was on cell confinement because his last name is Streckenbach (he did not mention CO Podoski's alleged "snitch" comment). *Id.* at ¶ 58. Captain Keller told plaintiff that, as a supervisor, he would talk to the involved staff members and tell them to stop the inappropriate behavior if there was any. *Id.* at ¶ 59.

Captain Keller then spoke to CO Podoski and Sergeant LaFontaine. *Id.* at ¶ 60. Both CO Podoski and Sergeant LaFontaine denied bringing up plaintiff's lawsuit against

8

VanDensen, and CO Podoski was not even aware of the lawsuit. *Id.* at ¶ 61. CO Podoski also told Captain Keller that he did not know the victim in plaintiff's criminal case and that it was plaintiff who brought it up to him, apparently just to make small talk. *Id.* at ¶ 62. Sergeant LaFontaine reported that plaintiff was always joking around and that some jokes has been reciprocated but that he never thought anything of it. *Id.* at ¶ 63. Captain Keller told both staff members to make sure they were acting professionally and that any conversations with plaintiff were work-related if they were not already. *Id.* at ¶ 64.

In November of 2016, plaintiff filed separation requests based on the alleged harassment by CO Podoski and Sergeant LaFontaine. *Id.* at ¶ 65. Plaintiff's SPN requests were submitted to Unit Manager Grenier and referred by her to Security Director Tarr, who then reviewed the request and delegated Captain Edwin Tetzlaff (who is not a defendant in this case) to conduct an investigation. *Id.* at ¶ 66. In the SPN pertaining to CO Podoski, plaintiff complained about the cell door kicking, the "favorite jailhouse lawyer," and "biggest jailhouse snitch" comments, CO Podoski's connection to plaintiff's victim's sister, and CO Podoski's threat to have plaintiff placed on cell confinement because "his name was Streckenbach." *Id.* at ¶ 67. After investigation, Captain Tetzlaff reported to Security Director Tarr that CO Podoski apparently did not know plaintiff's victim's sister; that CO Podoski's supervisor talked to him; and that due to a change in CO Podoski's work assignment, future contact between him and plaintiff was unlikely. *Id.* at ¶ 68.

In the SPN request relating to Sergeant LaFontaine, plaintiff complained about the excessive stamping incident, door kicking, and the paging of plaintiff as "Attorney

9

Streckenbach." *Id.* at ¶ 69. Captain Tetzlaff also reviewed this incident and reported to Security Director Tarr that Sergeant LaFontaine admitted the stamping and other "banter" but denied any maliciousness and said that the banter was often initiated by plaintiff. *Id.* at ¶ 70. Due to a job change for Sergeant LaFontaine, there was very little, if any, chance of continued contact between him and plaintiff. *Id.* at ¶ 71.

Security Director Tarr reviewed both investigation reports and adopted the investigator's recommendation to deny both separation requests, concluding that the requests did not meet applicable DOC policy and that any incidental contact between plaintiff and these staff members would not be detrimental to the inmate, staff, or institution. *Id.* at ¶ 72. Plaintiff filed an inmate complaint challenging the denial of his SPN requests submitted against Podoski and LaFontaine, which ICE Smith reviewed and recommended dismissal. *Id.* at ¶¶ 73-74. ICE Smith noted that Security Director Tarr investigated each separation request and concluded that the criteria for separation had not been met under DOC policy. *Id.* at ¶ 74. Warden Meisner adopted ICE Smith's recommendation, dismissing the complaint, and DOC reviewers dismissed plaintiff's appeal finding the institution handle his SPN requests and complaint reasonably and appropriately. *Id.* at ¶ 75.

Plaintiff previously filed an inmate complaint naming Unit Manager Grenier while the separation requests were pending (RGCI-2016-27759), which was dismissed because the SPNs were pending. *Id.* at ¶ 76. Plaintiff did not appeal the dismissal. *Id.* Plaintiff never filed any inmate complaint about the actions of defendants Werner, Keller, Smith, Wesmer, Hautamaki, or Meisner. *Id.* at ¶ 77.

In July of 2017, plaintiff told the Reclassification Hearing Committee that he believed he was being "black balled" from work assignments and otherwise "retaliated against" at Redgranite because by then he had filed this lawsuit. *Id.* at ¶ 79. Plaintiff did not claim to be in any physical danger whatsoever. *Id.* at ¶ 80. He requested a lateral transfer to Oshkosh to be closer to home, and the Committee noted that there was concern plaintiff had become "too friendly" with staff at Redgranite. *Id.* at ¶¶ 81-82. Security Director Tarr and the security director at Oshkosh agreed to the transfer, which occurred in August 2017. *Id.* at ¶¶ 82-83.

## II. ANALYSIS

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding defendants' motion, I resolve all factual disputes and make all reasonable factual inferences in favor of plaintiff, who is the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

### B. Plaintiff's Motion for Summary Judgment

Plaintiff filed his own motion for summary judgment, but he did not include any supporting material with that motion. While he filed what he has termed an "opening brief," that submission was not in support of a motion or an amended complaint. And it was not submitted in support of a motion for summary judgment. Plaintiff alludes to

Federal Rule of Appellate Procedure 28, but those rules apply in Circuit Court (the court of appeals), not in district court (where plaintiff currently is). He therefore failed to comply with the Local Rules, specifically Civil L.R. 56 (E.D. Wis.). Because he did not comply with the rules, and because he provided nothing for me to base a decision on (proposed findings of fact, support for those findings), I will deny his motion for summary judgment.

    *C. Defendant's Motion for Summary Judgment*

        1. Exhaustion

Defendants CO Kosminski, CO Crump, Supervisor Werner, Captain Keller, ICE Smith, Captain Wesner, Deputy Warden Hautamaki, and Warden Meisner all argue that they are entitled to summary judgment because plaintiff did not exhaust any claims against them. Under the Prison Litigation Reform Act (PLRA), which applies in this case as the plaintiff was incarcerated when he filed his complaint, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001).

The ICRS within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). Before an inmate can file a lawsuit, he must exhaust

all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. In order to use the ICRS, an inmate must file a complaint with the ICE within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6).

After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the CCE. Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

Plaintiff never submitted any inmate complaint challenging the actions or behavior of defendants Werner, Keller, Smith, Wesner, Hautamaki, or Meisner, so they are entitled to summary judgment. As for Crump and Kosminskas, plaintiff neither appealed the dismissal of inmate complaint RGCI-2017-5168, which dealt with the February 2017 strip search incident, nor had he received a decision on his then-pending SPN requests at the time he filed the lawsuit. Plaintiff filed nothing to counter the defendants' arguments about exhaustion. Therefore, he had not exhausted his administrative remedies when he filed his lawsuit. *See, e.g.*, *McClure v. Yurkovich*, No.

2013 WL 1755505, *3 (N.D. Ill. Apr. 24, 2013) (holding that defendants were entitled to summary judgment because plaintiff "did not properly complete the grievance process before he filed his lawsuit"). COs Crump and Kosminskas are also entitled to summary judgment.

   2. Retaliation

Plaintiff is proceeding against the remaining defendants—CO Radtke, Sergeant LaFontaine, CO Podoski, and Security Director Tarr—on a claim that they retaliated against him for filing a lawsuit against another staff member. The First Amendment prohibits retaliatory actions by government officials against individuals who are exercising their constitutional rights. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). "To make out a prima facie case on summary judgment, the plaintiff[] must show that: (1) [he] engaged in activity protected by the First Amendment; (2) [he] suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the [prison official's] decision." *Id.*

Plaintiff has satisfied the first element: his lawsuit against VanDensen was protected First Amendment activity. I will begin with CO Radtke, who plaintiff alleges retaliated against him when he searched plaintiff's cell. First, CO Radtke's search of plaintiff's cell was routine, which plaintiff admits. Routine cell searches are not "actionable deprivations" for purposes of a First Amendment retaliation claim. The Seventh Circuit held in *West v. Kingsland* that a routine search of plaintiff's cell, without evidence that his cell was targeted more frequently, did not result in a deprivation likely to deter future First Amendment activity. 679 Fed. Appx. 482, 486 (7th Cir. 2017) (citing *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)). Even a cell search

14

that required plaintiff to reorganize his cell on a single occasion (plaintiff testified at his deposition that CO Radtke turned his cell "upside down") would not be enough to deter an ordinary person from pursuing First Amendment-protected activities. While inconvenient, none of plaintiff's property was destroyed or harmed. So, plaintiff's claim fails at the second element and CO Radtke is entitled to summary judgment.

Plaintiff claims that Sergeant LaFontaine retaliated against him by verbally harassing him (joking about the amount of money he sought to recover in the lawsuit and that plaintiff thought he would win; threatening to put him in confinement; calling plaintiff to the sergeant desk by paging "Attorney Streckenbach"; and repeatedly stamping his legal mail). The standard for a retaliation claim is whether the retaliatory act would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). As the Seventh Circuit has explained, "the Constitution does not compel guards to address prisoners in a civil tone using polite language." *Antoine v. Uchtman*, 275 Fed. Appx. 539, 541 (7th Cir. 2008). While plaintiff cites the Department of Correction's work rules for prison staff repeatedly and relies on it heavily as proof defendants violated his constitutional rights, the Seventh Circuit has explained that though it may be advisable to control staff members' "manner of speech," "that is for statute and regulations (or perhaps the common law) rather than a constitutional right." *Id.* In other words, the fact that a staff rule condemns such behavior is not evidence of a constitutional violation.

Sergeant LaFontaine's joking and teasing is not the kind of retaliation likely to deter people from further engaging in First Amendment activities. "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was

always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart*, 677 F.2d at 625. Even threats to beat a prisoner for filing grievances*, Boclair v. Beardon-Monroe*, No. 10-cv-879-SCW, 2012 WL 3835874, *5 (S.D. Ill. Sept. 4, 2012), and threats and racist comments, *Antonie*, 275 Fed. Appx. 539, are insufficient to amount to retaliation. Therefore, none of Sergeant LaFontaine's actions (including threatening to place plaintiff in solitary confinement) are sufficient to raise a retaliation claim. Sergeant LaFontaine is entitled to summary judgment.

Plaintiff's claim that CO Podoski retaliated against him by threatening to place him on cell confinement also fails, then. Such an idle threat is simply insufficient for the same reasons Sergeant LaFontaine's idle threats were insufficient: it would not deter an ordinary person from engaging in free speech. So, too, was his comment that plaintiff was "Redgranite's favorite jailhouse lawyer." While plaintiff may have found CO Podoski's comment irritating, or even humiliating, it is simply not enough to constitute the kind of retaliation that would deter future First Amendment conduct. But plaintiff's biggest complaint about CO Podoski is that he called plaintiff "Redgranite's biggest snitch" in front of other inmates. He alleges that this put him in imminent danger—that CO Podoski threated him by calling him a snitch. But he relies only on his conclusion that being called a snitch in front of other inmates put him at risk of harm. He provides no evidence that he was harmed or even at risk of harm (no threats from other inmates, for example). Without more than his own subjective belief, no jury could conclude that a reasonable person would be deterred from engaging in protected activity by being called a snitch.

Furthermore, even if being called a snitch was enough to satisfy the second element of plaintiff's retaliation claim, it fails at the third element because plaintiff cannot show that CO Podoski calling him a snitch is causally related to him filing the VanDensen lawsuit. In fact, CO Podoski claimed he knew nothing about the VanDensen lawsuit when he was contacted by Captain Keller in late 2016. Plaintiff's theory that Redgranite is a small place and words spread is not enough. Furthermore, to the extent that there is any evidence in the record that CO Podoski had animus towards plaintiff, that evidence is that CO Podoski knew the sister of plaintiff's victim (which he, in fact, did not). Therefore, any record-supported animus is not related to plaintiff's protected First Amendment activity: the VanDensen lawsuit. CO Podoski, then, is entitled to summary judgment.

Finally, plaintiff claims that Security Director Tarr did not intervene to stop the defendants' retaliatory behavior. But their behavior was not in violation of the Constitution, so there was no reason for Security Director Tarr to do anything to stop it and protect the plaintiff. Therefore, he is also entitled to summary judgment.

In summary, "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment." *Dawes*, 239 F.3d at 493 (internal citation omitted). Neither CO Radtke, Sergeant LaFontaine, nor CO Podoski made statements that rose to the level of retaliation. And, in turn, Security Director Tarr cannot be liable for failing to intervene when there was no constitutional violation. They are all entitled to summary judgment.

## ORDER

**THEREFORE, IT IS ORDERED** plaintiff's motion for summary judgment (Docket No. 31) is **DENIED.**

**IT IS ALSO ORDERED** defendants' motion for summary judgment (Docket No. 34) is **GRANTED**. Judgment will be entered accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 13th day of September, 2018.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge